The case today is number 201360, Julio Rodriguez-Mendez v. United States. At this time, would counsel for the appellate please introduce himself on the record to begin. Good afternoon, Attorney Kevin Lerman on behalf of Julio Rodriguez-Mendez, may I reserve three minutes for rebuttal? You may. May it please the Court, following the 2016 Supreme Court decision Puerto Rico v. Sanchez v. Valle, Mr. Rodriguez's conviction and sentence under 18 U.S.C. 922 G1 are no longer valid since he was previously convicted under an equivalent Puerto Rico prohibited person statute Article 504. Separately, Mr. Rodriguez can no longer be classified as an on-career criminal as his prior convictions for motor vehicle robbery in 1993 can no longer be classified as violent felonies. Since the double jeopardy issue would moot the second issue, if the Court permits, I'll begin there. The 922 G1 offense meets the Blockburger same element offense test. Before you get into the details of it, what is your answer to our prior precedent saying that on plain error it failed the first two prongs? Since the first prong is whether there's error at all, why isn't that dispositive of that issue? Sure. Well, this Court has held that a no plain error decision is not a decision on the merits. Well, that's true when we haven't reached the first prong, but if the first prong of plain error is is there error and the second prong is whether it's clear, I could see why a ruling by us that something wasn't clearly wrong is not a ruling as to whether it's just wrong. But when we've said that it is both not wrong and not clearly wrong, how do you get around that? Well, I think that I don't think there's a case on point, at least that I found, that says that that ruling is binding. And I think if you look at the Why logically wouldn't it be? Because if a Court knows it's looking at an issue on plain error and it knows that it's not setting precedent, but it wants to speak, say something about the issue, then But then you would just say second prong. I mean, second prong is clear and obvious. So when you decide first prong, you say we know the answer. If we don't know the answer, we just say we have no case that answers the question. And so you lose anyway. That's what we would say. So when we say first prong, we're saying this is the answer. Well, it doesn't make sense to me, especially looking at the depth of this decision. For example, the jurisdictional element prong. The Court didn't go into any depth on that. And I think that while the U.S. Supreme Court hasn't spoken decisively, the Court in this context leaves enough on the record in common law to understand that substantive elements are very distinct from elements that are merely jurisdictional, that supply subject matter jurisdiction for the Court. So if that's a ruling that then is going to bind any future panel, I think that if the panel was looking at that and knew that it was doing that, it would have looked a lot more carefully at the issue. And I think the parties would have approached the issue. Everyone knows they're going into it on plain air, so I just don't I don't think it has that depth. Otherwise, this panel would be bound. And I guess that's a reason for us to be careful when we're writing about whether there is an error or not. But I think the question here is, given that we have that precedent, we have to look to it. Well, at the moment, improvising, I don't have a better answer than I gave. I'd like to argue. And if I can find something, I would submit it in a 28J letter because I don't think that hit the depth necessary. And I think that these offenses do establish the test. All right. So accepting that, do you agree Blockberger is what we should be looking to to figure out whether there actually is a double jeopardy problem? That's correct. Since Grady was overruled, Grady experimented for about three years with another test. I don't think even under Blockberger, I think the law is somewhat confusing. I think one of the best phrasings of it comes from Justice Scalia in Grady when he references that if it's possible to violate each offense without violating the other, then they cannot constitute the same offense. And I think that's an important phrasing here in understanding what's happening. So are there ways you can be denied a permit other than the fact of a prior felony? There are. There are. And that's kind of analogous to the, for example, the cases dealing with felony murder where there's lots of predicates that could satisfy the felony murder aspect and then certain felony murders. So tell me what's wrong with the government's argument. For one, for the Puerto Rico statute, it's a regulatory offense. Do you have this piece of paper that allows you to have a permit? The other has nothing to do with the piece of paper. It's the fact. It's your status as a felon. So it seems to me you're proving different things in each case, and there may be some factual overlap, but maybe not based on the answer you just gave me. So why doesn't that answer the Blockberger question? Well, at least two things, Judge Ephraim. The first one is that everyone who violates 922 G1 in Puerto Rico is also in violation of the licensing statute. And so, yes, not everyone who violates the licensing statute violates G1, but the licensing statute is modeled like so many regulations throughout the United States. Is that true? So in a licensing statute case, if the jury was not asked to find whether he possessed the gun without a license, could you convict him? In the licensing statute, no. So then doesn't that create a problem for your position? Because that suggests you have to prove that he had a license, but you don't on the federal offense. I don't think so, if I understand the question, because it's... I think what your position is, is that in the case I'm positing, maybe there would be harmless error or something if you proved he, in fact, was a felon, like he couldn't show prejudice from the error in omitting that element from the jury. But in fact, it would be error not to instruct the jury they have to find that he had no license, but that's not true of the non-licensing statute, right? Well, the reason I'm pausing is I've read various cases in the Puerto Rico courts on proving the absence of a license, and the law has changed recently. It's complicated. That was part of the reason why we suggested that the court remand. But those cases, I guess, what I'm asking is slightly different, not how do you prove that there's a violation of the licensing statute. It is what is the elements of the licensing statute. It isn't an element that you had a license. Well, I think you can present as evidence... That you didn't have a license. The element is that you don't have a license. But that has to be proved. Now, it may be that you can prove it by showing that they were a felon, and it might be a jury could infer from that. But the jury is still being instructed properly, and I think you'd be right to object if the jury wasn't even asked to pass on that question, right? I believe so. Although you could present... So doesn't that, just for Blockberger purposes, show the difference between the federal and the Puerto Rico offense? I think with a narrow reading of Blockberger, but you also have this language that the Supreme Court uses that even if offenses may not be perfectly lesser included, there are species of lesser included offense. And so, which I think is... I don't think all of the... It's not a fleshed out test like the test for the categorical approach. And in some of these Supreme Court cases, there's dispute. For example, one of the... I believe it's in Felix, Justice Rehnquist wanted more of a categorical approach like test for Blockberger, and the other justices didn't join. That might be true if what we were talking just was like verbiage. So the elements are functionally the same, but one says license, the other says documentation or something like that. I could see why you wouldn't be strict about that. But this seems quite different because this is, do you have to find the thing at all? I think you're right to say it would be error not to instruct the jury they have to find it. And I just... It seems a bit of a strange notion under Blockberger that notwithstanding that we just look past that because there's a means of proof which would be mostly dispositive or almost always dispositive. Right. I think that... I don't have a great answer. It's a murky area of law. But I do think that Blockberger uses the language that the same act or transaction constitutes a violation of two distinct statutory provisions, and then it says we look to whether each provision requires proof of a fact, which the other doesn't. And so I think that in this case... In this case where you have various, and one of the things we included in the brief is even the solicitor general notes the interrelated notions of... Your case would be weaker if it said in that sentence proof of an element, not included the other. But since it says proof of a fact, you say the right way to read that as well as the fact proved would always satisfy the element, then that's enough. Is that the idea? I think so. And that's how I read Justice Scalia's point about that you can't... You have to be able to violate both of the statutes independently. And that's just not possible with G-1. So G-1 has to be sort of somehow inside that. On the ACCA issue, the crime of violence issue, do you want to get to that? Sure. So, there's a number of reasons why 173B is overbroad. And I think the most compelling one is that it encompasses threats to property. And so, and there's no dispute from the government. The government's briefing doesn't claim that the violence and intimidation language is divisible. And so, on that basis, it's not a violent felony for the ACCA. The government argues here that, well, they have a couple of different arguments in there. The one, I'm sorry, the other point to make here is, like in Vélez Vládegas, we have more clarity now about the mental state that can satisfy... Two arguments that are advanced for affirmance would be, one is, it's extortion, so it falls within the enumerated clause. And that would be presumably true, even accepting that it's forced intimidation vis-a-vis property as opposed to the person. What's your answer to that? Sure. So, I think that, well, there's two, I think there's two kind of formulations, it seems, from what the government's argument is. And there's sort of a maximalist notion that induced consent is kind of the same thing as... It's kind of ironic that you are each going to be taking the opposite position about how seriously we take what an element is, depending on which of the two arguments we're talking about. But I suppose that's unavoidable, given an adversary system. Right. Well, I think it kind of shows the weakness of both approaches by the government, because the double jeopardy test is not a fragile guarantee, and it's a less strict test. And they sort of want that analysis to apply to the categorical approach. But regarding the sort of non-consensual takings versus the induced consent element, there's the kind of a maximalist approach, and the way that I read the cases that come out the other way, I don't think the cases are taking that maximalist approach. So if we go back to the earliest case, Becerra-Lopez, from the 9th Circuit in 2008, there's a particular reading of the California robbery statute, where the court precisely notes at 892 of that opinion that California Penal Code 211 has no immediacy requirement. And regarding the same statute, the 10th Circuit notes that California, unlike other jurisdictions, included much of what is extortion in the robbery statute. We also have, I think the clearest, sort of more narrow, the narrowest reading is Montiel-Cortez, that looks at a Nevada statute, and it's not saying that consent doesn't matter. I don't think any of these cases say what it seems like the government's saying here. It's saying that there's language about compelling acquiescence to the taking of something. And that's very particular to that Nevada statute. If we look to the Puerto Rico statute, the taking has to be from someone's immediate presence and against his or her will. So it's completely a categorical mismatch. I think the sort of maximalist approach, I think, would completely misapprehend the categorical approach. They have a second argument, if I'm following it, which is that the way to do the analysis here is we look at the full universe of how the crime could be committed. And if all of the ways of committing it fall either under the enumerated clause or the force clause, then it qualifies as a crime of violence, even if the stuff that falls within the force clause would not itself be extortion and the stuff that's extortion would not itself fall within the force clause. What's your answer to whether we're permitted to do that form of the analysis? Well, I think that it's hard to think the court would have to arrive there because they would fail before they get to kind of parsing what could fall under extortion. They only claim that intimidation, robbery of a vehicle by intimidation, is extortion. And the rest of it, the entire thing can be met by reckless conduct. It can be met by de minimis force. It can be met by force against property. And so I don't think we can arrive there. It has issues, I think, in terms of looking at a categorical approach that demands certainty and having this thing that looks like divisibility. You said it can be used force against property. So where does that, I saw the citation that talked about how intimidation is intimidation, you know, threats against property. Where does the violence against property come from? Does that have that in that same statute? I didn't see that in the briefs anywhere. Well, you have, so the elements of the statute are, it basically, it borrows from simple robbery and then it adds. So I'm obviously asking because the definition of violent felony in the ACCA does not talk about violence against property. And now you're saying, as I understand it at least, and you're saying here that the use of violence in the Puerto Rico statute is satisfied by violence against property. Like I actually do burn down, I don't know, your house so that you look away and then I take the car or something like that. Would that qualify as violence? Right, so the violence prong, and my apologies, I may have misspoken there. So violence, and I'm looking at addendum 24, violence is focused on physical force against a person. So then we'd be in the realm of, they would also have to show that it can't be met with de minimis force and it can't be committed through recklessness in order to get to the extortion side of it. But independent of that, I thought, since they're not arguing violence and intimidation are divisible, does it matter? Or am I missing something? I think it matters that they're... I mean, this would be helpful to you if it was indivisible on that dimension, wouldn't it be? Right, and I think... Because so long as intimidation could be property based, then even if violence was only person based, it would be irrelevant if they're not arguing it's divisible along the axis of violence or intimidation. That's true. I was responding more to the extortion aspect of the argument. But that's true, and then it would matter again if the court was considering understanding part of the possible conduct that could violate 173B as extortion, then... And I guess, is there a textual reason that suggests we can't do that? It wasn't clear to me the definition permitted that, just as a textual matter. Even though it could have been written in a way that would permit it the way it is written. I don't... Doesn't it say that the offense has to be extortion or have as an element? Right. So it either is an offense that is extortion or it is an offense that has an element. But I don't see how textually, then, you can do the, well, it's not extortion. I don't see it either. It doesn't have an element, but somehow it still qualifies. I don't see it either, and I read the Seventh Circuit case that they borrowed the argument from, and I can't say that I understand it, especially if there's a demand for certainty in applying the categorical approach. Any further questions? Thank you. Thank you, counsel. Counsel for the government would please introduce himself on the record to begin. Good morning, your honors, and may it... Sorry, good afternoon, your honors, and may it please the court. Michael Rotker from the Department of Justice on behalf of the United States. Let me just address very briefly the double jeopardy issue, and then I would like to devote, of course, any questions the court has on anything, but then I'd like to focus on the sentencing issue. I do think that the court's decision in Almonte-Nunez, it did address the first prong. It did. It's a merits ruling. I don't think that the doctrine that says, well, we didn't decide the merits, we just said it's clear or obvious, that's not what the court said. But even if you didn't have Almonte-Nunez as a matter of first principles under Blockberger, they're clearly not the same offense, because each statute requires proof of at least one fact that the other does not, namely the lack of a license and the proof of felon status. And how does it operate, though, when, just to use the word fact is a little confusing, if the proof of the fact of being a felon would be proof that you don't have a license, or is that not true? I don't know if it's true or not, but I think the thing... You don't know? Does that mean it's not clear? It's not clear to me. No, but I think the larger point is that for Blockberger, we don't get into those kind of hypotheticals. It's just a statutory... It's a statutory comparison of these textual elements. Well, I guess I would think that was true if the language of Blockberger was talking just about elements, but it says the fact needs to be proved. Right, but the way that Blockberger has been construed in the century since then by this Court, by the Supreme Court, is that the word proof of a fact means you do a side-by-side analysis of the statutory text of the elements of the two crimes. I mean, just to play this out, let's do that, but then it turns out when we do that, the facts are identical that need to be proved for each element, so why wouldn't it be the same? In other double jeopardy contexts, it may be misremembering, but like Ash in those cases, I thought sometimes we're quite practical in how we apply it, and we're trying to figure out what facts would actually have to be proved, and we try and really get into what's the record show and all of that, so that same spirit is, I think, what your opponent is suggesting we do here, and if practically proof of felony will every single time satisfy the element, then it seems a little bit formal to say yes, but. Right, I understand. You know, the Ash context is the collateral estoppel component of double jeopardy, and that's where you do get into that kind of pragmatic, we have to determine what the jury necessarily found. This is a different question. It's not the collateral estoppel component, and I think with all respect, I think the question is really just a very simple side-by-side A to B comparison of what the language of the statutes requires. It's the fact that the possibility that, well, maybe the evidence will show that there's some overlap between the two, that's never been, to my understanding, despite the fact that Blockberg used the word fact, that's not really part of the Blockberg analysis. Dan, whether we have to resolve this conceptual point or not, I take it the government's not willing to say that there are cases in which proof of being a felon would not suffice under the Puerto Rico statute? I just don't know, Your Honor. So that's a way of saying the government's not willing to say that? Yes. So the only way you can win on the theory you're profounding is if we go from the side-by-side comparison. And Almonte Nunez, obviously, which did the side-by-side comparison. So I think for those reasons, unless the Court has further questions on the double jeopardy issue, I mean, I can't address the Teague point, but I don't think the Court needs to reach that question, and I would suggest that it's not prudent because you have a narrower way to decide the case. So if the Court has no questions, then let me turn to the sentencing question. And I realize that the issue is complicated and multilayered, and what I'd like to do with the Court's indulgence is just take a moment and kind of lay out the government's understanding. So in order to satisfy, in order for a predicate crime to satisfy the elements clause of the definition of a violent felony, the government has to, the predicate has to satisfy four requirements. It has to involve physical force. It has to involve the requisite quantum of violent force. And that force has to be used against the person of another. Those are the four things. Or threatened. The four components of the elements clause. Now, the argument that was made in the district court, which the district court rejected, and we think correctly, was the quantum of force, the second element. And what the district court found is this is not a simple robbery statute where it could be purse snatching and you don't have the requisite quantum of force because the statute requires the use of a deadly weapon. So Mr. Rucker, that's where I guess I don't follow in the following way. That part of the statute talks about the weapon, while it refers to a weapon that could cause grave, capable of causing grave bodily harm, it does not necessarily modify the violence. So you could use a crowbar, which I could use to hit you over the head. Right. But I could use the crowbar to pop open the door. And I have used a weapon that is capable of causing grave bodily harm, but I didn't do it at all connected to the violence. That's why the residual clause made a ton of sense. Well, right, sure. In picking up a case like that. But we don't have a residual clause now. You can't rely on that. Right. Well, I mean, that's a very fair point, Judge Afram. And I don't believe that that's, that was something that the district court, I think, didn't address because it wasn't squarely teed up in that. Because, right, we find it in the assault context where it makes a lot of sense. Exactly. The crimes, the assault, and I'm going to hit him with a crowbar. That's how I committed the assault. That's Wendell. But this isn't written quite that way. Yeah, that's a valid point. I would say, in all fairness, though, I don't, what I was trying to tee up and sort of get to is the larger point is I don't really think that that's what's contested now on appeal. I don't think that they're really challenging that aspect of the ruling. What their issue is on appeal now is instead of focusing on the quantum of force, they're focusing on the fourth requirement, which is that it has to be directed against the person. That's the point he just made. I'm sorry. Then I misunderstood your question. I apologize. Well, one question is, you say, well, you say that, I think everyone agrees, common ground is Puerto Rico's simple robbery can be committed with physical force that doesn't require Violent force. That causes physical pain.  Yes. Point one. Point two is you say, but don't worry about that because this statute requires a weapon. Correct. And so in assault, I get that. Like a de minimis touching could be an assault, but if you have to commit the assault with a weapon, that ups the violence. Right. And what I don't see here is the required connection in this statute of the weapon to the violence. So you could use the weapon to do something else. Right. In a non-violent way. And the violence you use was still the de minimis, I grabbed the keys from your hand. And the reason that is, is because the deadly weapon's being directed at the property, not the person. Correct. So to say, well, they're not really arguing that, they're just saying focus on the property, not the person. That is the grounding theme for that point. In all fairness, I guess we had a different understanding of how their property argument factored into the statute. What our understanding was, was that the property argument was that that would render it over broad under the elements clause because it has to be directed at the person of another, and that's why we think the extortion comes into play. Well, I understand that you can then get to extortion.  That would be logical. But if we're talking about the force clause. Right. And their point about it being directed at the property isn't an argument against the extortion. That's a separate point.  Well, if you're just switching and saying we don't really have an argument about the force clause, we have an argument about extortion, that's fine. Right. If that's the way the statute operates, and I'm not prepared to concede that it is, but if that's the way the statute operates, then yes, then the full spectrum wouldn't be covered. The full spectrum of conduct wouldn't be covered if the force can be applied against property. Unless extortion subsumes it. Right. And we think that extortion does. So that's where the extortion comes into play, because the Supreme Court said in Shidler that the generic definition of extortion is obtaining property. I'm sorry. Did you have a question? Obtaining property with consent that's been wrongfully induced, whereas the Puerto Rico statute, like many robbery statutes, requires no consent whatsoever. But this is an indivisible statute, right? Nobody disagrees. We haven't argued that it's divisible. Right. So under the categorical approach. Yes. One way I could commit this is to use my crowbar, back to my example, to pop the car's door. Right. And I grab the keys from his hand. Right. I'm guilty, because I used force to grab the keys from the hand. I used a weapon or an object that could cause grave bodily harm to pop the door. I'm guilty. Right. But I haven't committed an act of violent felony. Well, unless you're saying that's extortion. Yes. If you say that's extortion, why is that extortion? Because it's taking it through the definition. It substantially corresponds to the generic definition of extortion, which is what I was saying about Shidler.  This is the irony about what you weren't saying about Shidler. I understand. And that's the way the law goes, you know? But that's why we think it would qualify as extortion, because the using of the crowbar is inducing consent by fear that results in the taking of property. Okay. So the question then becomes, if generic extortion requires wrongfully induced consent, whereas robbery requires no consent, is there any daylight between those concepts? And why isn't there? Well, there is as a theoretical matter, but if consent has been wrongfully induced, that's not consent at all. If someone holds a gun to a suspect's head... But there's a difference between saying your money or your life and just shooting somebody. I'm sorry. It's the difference between saying your money and your life and shooting somebody. Your money or your life is one way of getting somebody to get me something. Correct. The other way is I just shoot the person and take it. Are those the same crime? No, it's not the same crime. But you're saying they are. No, I'm not saying it's the same crime. I overbore your will if I shoot you and take your property. Right. And I overbore your will if I say your money or your life. Yes, in a sense... And your position is those are the same. It's not that they're the same. It's that the gap... Remember, the test for whether or not a predicate like 173B qualifies as extortion, it doesn't have to be the same. It has to substantially correspond. And the question is whether or not the daylight between wrongful consent and no consent is so great that it renders it a categorical mismatch. It's just in this context, when you have a listing of common generic offenses, it's a little puzzling to me that robbery didn't spring to mind. So that just is an unusual thing to have plucked out. I agree, Your Honor, and I would say I don't want to go too far outside the record. But I do believe when ACCA was first enacted, robbery was an enumerated offense. It certainly was, and it's gone through various iterations in the guidelines. Is your view that all of these cases that we've been struggling with about purse snatching and just taking out... Should have been just enumerated clause extortion cases? I think they could have been. I think many robberies would qualify as generic extortion. Is there any that wouldn't? Well, it obviously depends on the wording of the statute, right? I can't speak in the abstract. But in general, many robbery statutes that don't require consent and that involve purse snatchings, yes, I think a lot of them would qualify. Now, if the arguments were in advance, then the court had no occasion to reach the issue, but we are pressing the argument here. Now... Is intimidation separate from the element of obtaining the... So extortion requires that I overbore the will in fact or that I wanted to do that? What does intimidation mean? Well, intimidation in the Puerto Rico statute? Yeah, I mean, if I just say something really horrible, like I'm going to burn down your house, and you say, too bad. No, I don't think that's intimidation. I don't know for a fact what the status of the law is in Puerto Rico, but we've at least briefed this case on the assumption that it's intimidation in fact. And so the question then becomes, is there daylight between wrongful consent? In other words, if a suspect is in an analogous context, if you tell a suspect, sign your Miranda rights with a gun to their head and they sign it, that's wrongful consent, but that's not valid consent in both scenarios. I think you're confusing two things potentially, which is... It wouldn't surprise me if I was. Well, the question of whether proof that the consent was not valid defeats an extortion charge is a different question from whether to satisfy an extortion charge, I have to prove that I was trying to induce consent. And I think you're treating those two questions as if they're identical questions. That's fair. I accept that observation. I think in this context, though, the question is not really one of proof. We're not trying to prove an extortion charge. It's just for purposes of the categorical. That's why this is quite like our conversation about Blackburn. Right, I understand. The more we get into the elements of it, then the fact that it can be proved a certain way doesn't really tell me very much about whether it has the elements that would make it generic extortion. And it seems strange in thinking about what is generic extortion to be focused on the modes of proving it out rather than the actual elements of that offense that gives it integrity as an offense distinct from others. And I don't think there's any, I mean, you know, in some, like, generic assault or generic burglary, there can be fights about what are all the elements. Right. And is recklessness really an element? Sure. What's the consciousness that's required? And the model penal code says one thing. Right. You're not making that kind of argument. Correct. You're saying the elements are what they are. There is an element of extortion that is not present in robbery. Yes.  And then you're just saying, but it doesn't really matter because of the way you could prove it out. Well, it's not that it's not an element of robbery, but we're dealing with as an armed carjacking, which is a heightened and aggravated form of robbery. No, no, no. You're saying that the, yes, but I think the logic of your extortion position would encompass unheightened robberies. I mean, isn't every robbery under this theory an extortion? It could be, yes. So then it doesn't matter. Okay, so that's where we circle back. And that's, but I think it makes sense. I don't think there's anything far reaching or absurd about saying that robbery qualifies. Other than the word extortion. I'm sorry? Other than the use of the word extortion. Because as we started, why would you use that word? Well, if I look up the word, it has this element, induced consent. Right. Yes. But don't worry about that. It's like it's not there. And why would that not, I mean, how is snatching someone's keys, which is robbery, induced consent? It's, okay, I think I'm getting tripped up now on the question. Snatching someone's keys is not induced consent. Okay, and so then. That's not extortion. That's not the generic definition. Because this requires a weapon to be used in some way.  That converts every robbery. Because it's using fear or threats of intimidation to secure the property. I want to just acknowledge my time is up if the court will allow me to answer. So that's why I was focusing with Judge Behr on the heightened nature of this is not simple robbery. So whether or not simple robbery is extortion is not a question the court needs to decide in this case, to decide this case. But I guess the question is if it's overbearing the will, is that the test? It's against the will. Scheidler says it's taking something of value from another with consent induced by the wrongful use of force, fear, or threats. Right, and you're saying that if there is a, so it's the wrongful use of force, fear, or threats. To induce the consent. I see. Yes, I'm sorry if I was not clear. I do realize my time is up. If I could have 60 seconds. Okay. It's okay if not. Your Honor was pointing out that there are sort of two different arguments the government wanted to make. I just want to address the second argument of the full spectrum of conduct. The court doesn't have any precedent that says that you can proceed where some of the conduct is elements clause and some is enumerated crimes. There are a number of circuits that have adopted that approach. The Seventh Circuit in Hatley is the most recent. Can you just help me how the text permits that? Well, because the text, the question of whether ACCA is triggered turns on whether or not you have three violent felonies. It doesn't turn on whether you have three enumerated crimes offenses or three extortion offenses. It's three violent felonies and violent felony has multiple definitions. So if 50% of the conduct is. No, no, but just the way the text is, it says one of the violent felonies can be extortion. Correct. Or the violent felony can have as an element. Right. There are two separate clauses of the definition. Right. But we're only dealing with one felony. That felony either is extortion or has an element or it has both. But what you're saying is it actually has neither. No, we're saying that a portion of the conduct covered by 173. Correct. That's not the offense. That's not the felony itself. That's a means of accomplishing the commission of the offense. I'm sorry, Your Honor. I'm not sure I'm following the textual impediment that you're suggesting exists in the statute. I apologize if I'm misunderstanding. But I don't see any barrier because the ultimate question, it doesn't matter which definition it fits under as long as. It's just the unit. The unit is the felony. The unit is a violent felony, yes. We take that felony. Right. And we ask, is that felony extortion? What is the answer? You're saying sometimes no. Well, no. What we're saying is. Yes. Sometimes no. Sometimes no. So sometimes no. So that means it's not that. Yes. Then we ask, does it have as an element the use of force? The answer has to be no. Sometimes. If it's directed at property, then no. But if it's, yes. Now you're not talking about the felony. You're just talking about means of committing the felony. So you're focused on conduct, which seems antithetical to the purpose of the statute. My time is up. I'm happy to address any other questions. No, please. We only have one case. So on the reckless point. On the. Reckless point.  So you say waiver. At multiple levels, yes. All right. Waiver in the sense that it wasn't raised below. It was not. But they would say. I mean, I'll say.  Not in this job that long. But one of the things I find difficult is this yee concept.  Sometimes, you know, you can make a different argument. And so the claim would be. This is not. One way to think about it is. This is not a violent felony. Right. And now they're saying. All right. We said a bunch of other things. Right. And now we're saying reckless. Right. And that would be a way. It's not a violent felony. Right. So I guess is. Why am I not thinking about that right? No, you are. But I would say that a couple of things about the yee principle. Yes, there is this principle out there. Yee was not a post-conviction case, however. And that's, I think, an important distinction. It's general civil litigation. And there are special rules. Particularly because of finality interests. In terms of what can be raised in a new claims. And new arguments. And new theories. In a collateral attack. That's one argument. Second argument is. If you take the yee to its logical limits. I think it creates all kinds of distorted incentives. Because people can just raise claims. And try out arguments. And if the argument doesn't work. Then you bring another argument. I also would point out. And I don't believe it's cited in the brief. But I'd be happy to submit a 28-J. There is a post-yee Supreme Court decision called Baker. Which makes clear that yee doesn't extend to the limits of its logic. In the sense that. At some point, a new argument. Or something that's denominated as a new argument. Is sufficiently distinct from the claim. That it becomes itself a new claim. And I think that's the better way to look at the recklessness argument here. And that's why I don't think it's properly before the court. It's outside the COA. And it wasn't raised below. And on the merits. It strikes me. I mean you talk about depraved heart recklessness. But as I read the brief. I sort of felt like this was kind of standard recklessness. I don't think we're pushing very hard on the depraved heart argument on the merits. I think it's. Conceptually, I think there's a question. About how you commit an armed carjacking in a reckless fashion. But in terms of saying that this might be extreme recklessness. You know. It's an argument that's been advanced in the brief. It does in candor feel more like a traditional recklessness argument. Than an extreme recklessness argument.  Thank you. Thank you so much your honors. Thank you counsel. At this time would counsel for the appellant please reintroduce himself on the record. He has a three minute rebuttal. Good afternoon. Once again your honors. Kevin Lerman on behalf of Julio Rodriguez Mendez. If I could just start on the Montanunez question. Since the government briefly addressed it. I think two reasons why that shouldn't be considered a holding that binds this panel. Is at 69 of the opinion. The panel notes that on Montanunez doesn't even attempt to show. That the charges don't require different proof of different elements. And then they so essentially that's step one that he didn't do in district court. And I think it's a quasi evidentiary. It's a legal question. So your idea is that on step one what we just said was essentially there was a waiver. And that's why we ruled on step one. I think it should be read that way. Especially given that it was the government that invoked waiver. And so the government asked the court not to deliver an opinion on the merits. And so and especially given this quasi evidentiary nature. Where he's in the opposite position here. Where we noted in the briefing that the government didn't challenge. That we've made a prima facie showing that the offenses are covered by double jeopardy. Where then that burden shifts to the government. To show by preponderance that they are different. And then if I can move on to the consent position. It does sound like the government today is taking this sort of maximalist view. That there's no difference between induced consent and non-consensual taking offenses. That's not supported. Even the most favorable decision for them by the seventh circuit. Even that decision says it's ruling in the context of Hobbs Act robbery. So Hatley acknowledges that induced consent. That even the Supreme Court sees extortion and robbery as distinct. Many courts including this court have said that the consent is the razor's edge. Separating robbery and extortion. And the government doesn't have any authority to support the saying that those elements don't matter. In the categorical approach context. If the double jeopardy issue was on the table. What do you say about the Teague point? The Teague point. I think it's ironic that the government is speaking about waiver. If any party waived anything. It's the Teague claim. The government. On the merits of the Teague claim. I understand the waiver point. Sure. We got to the contention that the rule is separate sovereigns. And then this is just obviously quite a significant application of that rule. But nonetheless just an application on the facts of this particular sovereign versus another one.  Well, once we get to the merits of that claim. If I can just answer the question. I think the case is in the brief area where in the brief time when Grady was applicable. Holding Grady retroactive makes sense in understanding that this is a rule. That places a class of people in a class of conduct. I think he's asking about the other prong. I think. I'm sorry? I think he's asking about the other prong. Which is, is this an old rule? Because there already was a doctrine of sovereignty. You know, combined sovereignty. And that was just applied to the Puerto Rico context. But we already knew the rule of combined sovereignty. And so this is just an application making it an old rule. It's obviously hugely significant application. So I don't mean to be asking the question by not acknowledging that. But just for purposes of the logic of Teague. The government's contention is all we're doing is applying that existing rule to a new set of facts. And when we do that, that's under Teague, not a new rule. Well, my first answer to that is it's just practical in this litigation. Because the government has taken three positions. And the most recent position is they agree that it's a new rule. And I don't think it follows from applying past case law. Even the Supreme Court in Sanchez Valle didn't agree on that. And since that case, there's been a very contentious decision in the Supreme Court. Basically recognizing triple sovereignty in certain jurisdictions for Indian tribes. So I think it has to be a new rule. And even this following the source back, this language about following the source back and arriving at Congress' doorstep, that can't be a literal interpretation. As I think it was the Breyer opinion said, we don't follow all of our law back to Rome and Justinian. And so I think it wasn't an obvious rule. And I think it has to be new. Thank you. And so we ask the Court to vacate the conviction and sentence agreement. Thank you, Your Honor. Thank you, counsel. That concludes argument.